# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| Tommie Jo Cory, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 5:18-cv-0532-PGB-PRL |
| v. | ) ) | |
| Wells Fargo Bank, N.A., f/k/a Wells Fargo Financial Bank. | ) ) ) | |
| Defendant | ) ) | |

## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION <u>SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS</u>

## INTRODUCTION

Plaintiff Tommie Jo Cory and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") have negotiated a settlement which will redress alleged injuries suffered by Wells Fargo mortgagors whose properties Wells Fargo encumbered with invalid Affidavits of Correction in connection with their Nowline and PrimeEquity lines of credit. The Settlement will compensate class members who submit claims for the clouds Plaintiff alleges were imposed on the titles to their properties, and Wells Fargo has agreed in the Settlement to release the liens on eligible class members' properties. Wells Fargo has also agreed not to enforce any of the Affidavits of Correction, and instead treat them (to the extent liens are not released altogether) as void. The Settlement marks the end of one year of hard-fought litigation and, once approved, will provide significant value, both monetary and non-monetary, to the members of the settlement class (hereinafter the "Settlement Class" or the "Conditional Class").[1]

Plaintiff requests that the Court enter an Order:

(1)     granting preliminary approval of the proposed Settlement;

(2)     certifying, for settlement purposes only and pursuant to the terms of the Settlement Agreement, the proposed Conditional Class for the purpose of providing notice to its members;

(3)     approving the form and content and directing the distribution of the proposed Mail Notice, Claim Form, and Email Notice, which are attached to the Declaration of James M. Parks from Rust Consulting as Exhibits 1, 2, and 3;[2]

(4)     appointing Benjamin Widlanski of Kozyak Tropin & Throckmorton, LLP, and George Franjola of Gilligan, Gooding, Franjola & Batsel, P.A.as Class Counsel; and

---

[1]   Terms used here that are defined in the Settlement Agreement, which is attached as **Exhibit A**, take on the same meaning as set forth therein.

[2] The Declaration of James M. Parks is attached hereto as **Exhibit B**

(5)      setting a date for the Final Approval Hearing approximately no fewer than 150 days after entry of the Court's Preliminary Approval Order.

The Settlement is a fair and reasonable resolution of Plaintiff's claims and satisfies all of the prerequisites for preliminary approval and certification of the Conditional Class. For these reasons, and those articulated below, Plaintiff requests that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order attached as **Exhibit C.**

## FACTUAL BACKGROUND

### 1.      The Affidavits of Correction

Plaintiff brought this putative class action challenging Wells Fargo's practice of recording allegedly fraudulent Affidavits of Correction purporting to extend the terms of their mortgage liens on borrowers' properties by up to thirty years without notice to the borrower or the borrower's consent.  *See* Complaint [D.E. 1]; Amended Complaint ("Am. Compl.") [D.E. 43-1.]  According to Plaintiff's Amended Complaint, Wells Fargo devised a scheme to record thousands of such Affidavits upon realizing that the mortgages executed in connection with its Nowline credit card accounts, which were secured by borrowers' homes,[3] left millions of dollars in debt unsecured. *See* Am. Compl. ¶ 3.  Eager to correct its mistake, rather than accepting the potential losses or seeking authority to amend its agreements with borrowers, Wells Fargo unilaterally recorded the Affidavits of Correction, which purported to extend the terms of its mortgages.  *See id.* ¶ 4.  By publishing the Affidavits in the official records of counties nationwide, Wells Fargo clouded the titles to thousands of affected properties without the property owners' knowledge or consent.

---

[3] The Nowline credit card was originally offered by Wells Fargo Financial Bank. In 2009, Wells Fargo Financial Bank merged with Wells Fargo Bank, N.A.; both will be referred to herein as "Wells Fargo." In October of 2017, Wells Fargo changed the name of the Nowline accounts to "PrimeEquity." For ease of reference, we refer to both as "Nowline."

Plaintiff brought claims against Wells Fargo for declaratory relief in violation of section 817.535, Florida Statutes, but Wells Fargo's alleged conduct also exposes it to liability for violations of the federal Truth in Lending Act and its implementing regulation, Regulation Z, which prohibit lenders from changing material terms of home equity plans without the borrower's written consent; and numerous state statutes.

## 2.    <u>The Litigation</u>

Plaintiff Tommie Jo Cory filed a class action complaint in Florida Circuit Court in Marion County on September 14, 2018, challenging Wells Fargo's practices and bringing claims for declaratory relief and violation of section 817.535, Florida Statutes. [D.E. 1.]    Section 817.535(8)(b)(2) mandates actual and punitive damages in civil actions involving an intent to defraud, and authorizes the court to levy a civil penalty of $2,500 for each false or fraudulent instrument at issue.  The action was filed on behalf of a class consisting of all persons owning real property in the State of Florida whose real property is described in an Affidavit of Correction filed in the official record by Wells Fargo.

Wells Fargo removed Plaintiff's case to federal court on October 19, 2018, and moved to dismiss the complaint three weeks later.  [D.E. 19.]  Wells Fargo raised three grounds for dismissal: (1) lack of standing, based on Wells Fargo's contention that  Ms. Cory suffered no injury; (2) failure to state a claim, on the ground that  Ms. Cory had not alleged that she was "adversely affected" by Wells Fargo's conduct, as required by section 817.535(8); and (3) failure to state a claim, because Ms. Cory's section 817.535 claim sounded in fraud, but, according to Wells Fargo, was not stated with particularity. [*Id.*]

Soon after Wells Fargo filed its motion to dismiss, Plaintiff advised Wells Fargo that she intended to file an Amended Complaint on behalf of a national class which would assert additional

11R6155                                3

claims, including a claim for violations of the Truth in Lending Act. Before Plaintiff had an opportunity to file her Amended Complaint, the parties agreed to mediate all of Plaintiff's claims, and the court stayed proceedings pending mediation. [D.E. 31.]

The Parties reached a settlement-in-principle at a formal mediation session overseen by mediator Jay M. Cohen, and the Parties' counsel agreed on a settlement outline on July 17, 2019, and the Court then ordered the parties to move for preliminary approval on or before September 13, 2019. [D.E. 39, 40.] The parties documented their agreement in a memorandum of understanding in the weeks that followed, and subsequently finalized and executed the Settlement Agreement. Plaintiff filed an Amended Complaint on October 4, 2019. [D.E. 43-1.]

**3.    The Settlement Terms and Agreement**

### A.  *The Proposed Settlement Class*

The Settlement Agreement provides relief to "all individuals with open or closed Nowline (currently known as PrimeEquity) accounts with Wells Fargo, and for whom Wells Fargo recorded an Affidavit of Correction regarding the maturity date." Ex. A. § II, ¶ 41.   Excluded from the Settlement Class are: (a) Wells Fargo and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (b) any Person who files a valid, timely Request for Exclusion; (c) federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof); and (d) the judges to whom the Action is assigned and any members of their immediate families. *Id.*

### B.  *Monetary and Non-Monetary Relief*

The Settlement Agreement affords members of the Settlement Class significant monetary and non-monetary relief. *See id.* § IV.  Wells Fargo will pay each Florida class member who submits a claim $1,250.00, up to a maximum of $1,103,750.00. *See id.* § IV.B. Plaintiff, a Florida

resident, has brought claims against Wells Fargo, for violation of section 817.535(8), Florida Statutes. That provision authorizes actual and punitive damages for plaintiffs who have had false instruments filed against their properties in the public record with an intent to defraud or harass, as well as a civil penalty of $2,500.00. *See* Fla. Stat. § 817.535(8)(b)(2). A $1,250 payment amounts to half of the civil penalty allowed by statute, even though the civil penalty would not be paid to Plaintiff or the class were they to prevail at trial. Moreover, Plaintiff and many, if not most, of the class members, suffered no out-of-pocket loss as a result of Wells Fargo's false Affidavits of Correction; a cloud on title causes economic losses only where a homeowner has attempted to sell or take a line of credit against their home. Accordingly, a payment of $1,250 will fairly and adequately compensate most members of the class. Should any Florida class member's actual economic harm far exceed $1,250, he or she will remain free to opt out of the Settlement Class and pursue claims in individual litigation. *See* Ex. A § VIII.C.

Wells Fargo will pay class members outside of Florida $250.00, up to a maximum of $934,500.00. *See id.* Plaintiff's Amended Complaint, filed concurrently with this Motion, raises claims for violation of the Federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), and its implementing regulation, Regulation Z, 12 C.F.R. 1026, against Wells Fargo on behalf of Plaintiff and all class members. TILA caps damages at the lesser of $1,000,000.00 or 1% of Wells Fargo's net worth for the entire class; accordingly, the $934,500 provided by the Settlement approaches complete relief for non-Florida class members.

The Settlement also offers many out-of-state class members equivalent or better relief than that which they might recover were they to proceed with individual litigation in their own states. The Florida statutes provide better relief than those enacted in nearly all other states; for example, many states do not offer punitive damages or impose civil penalties on defendants who file false

instruments in the public record. *See, e.g.,* La. Stat. §§ 10-9-518, 10-9-625 (allowing actual damages and $500 in statutory damages, but no punitive damages or civil penalty); N.C. Gen. Stat. § 25-9-518, 25-9-625 (same); Colo. Stat. § 38-35-204 (allowing only monetary damages in amount of petitioner's fees and costs). Regardless, as with Florida class members, out-of-state class members will retain the right to opt out of the Settlement and pursue individual recoveries. *See* Ex. A § VIII.C.

The non-monetary relief provided by the Settlement Agreement will not only put an end to the practices described in the Amended Complaint, but also clear the titles of the properties of nearly all class members with outstanding obligations to Wells Fargo. *See* Ex. A § IV.A. Indeed, Wells Fargo has agreed to release the liens for all open accounts, reserving only the right to retain a first-position lien on any vacant property connected to a delinquent account. *See id.* This small exception (estimated to be approximately ten borrowers) is to ensure that vacant – and possibly abandoned – properties do not contribute to blight in their respective communities in the absence of an identifiable owner or resident. For Nowline accounts for which the lien is being released, Settlement Class Members also will be afforded the opportunity to re-secure their loans, should they so desire. *See id.* For Nowline accounts for which liens are not being released, Wells Fargo agrees that it will treat the Affidavits as null and void. *See id.*

Wells Fargo has also agreed that it will stop recording further Affidavits of Correction for Nowline accounts, except where such filing would be allowed under applicable state or federal statutory law. *See id.*

### *Release of Claims Against Defendants*

In exchange for the relief provided by the Settlement, members of the Settlement Class will release Wells Fargo and its present and former parents, subsidiaries, divisions, affiliates, partners,

employees, officers, directors, attorneys, accountants, experts, consultants, insurers, agents, predecessors, successors, heirs, and assigns, from all claims of every nature and description, including Unknown Claims, relating to the defense, settlement, and/or resolution of the Action or the Released Claims. *See* Ex. A § IX.E.

Once the settlement is final, Settlement Class Members will have expressly waived and relinquished with respect to the Released Claims, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar to, comparable to, or the equivalent of Section 1452 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

*See id.* § IX.D.

The "Released Claims" include any and all claims that a Releasing Party may have, whether known or unknown, asserted or un-asserted, latent or patent, has been, could reasonably have been or in the future might reasonably be asserted under any body of law in a court or any other judicial or other forum, against any of the Released Parties, arising from, or in any way relating to the maturity date of the open-end mortgages, deeds of trust, or similar instruments that secure the Nowline accounts, including but not limited to any claims made relating to the Affidavits. *See id.* § II.A, ¶ 36.

### C. *Class Notice and Claims Process*

Settlement Class members will receive notice of the settlement and a claim form by U.S. mail at their last-known addresses in the forms attached to the Declaration of James M. Parks  as

Exhibits 1 and 2, respectively, assuming they are approved by the Court. *See* Ex A. § VI. The same documents will be sent to Class Members by electronic mail, in the form attached to the Declaration of James M. Parks as Exhibit 3, where email addresses are reasonably available from Wells Fargo's electronic records. *See id.* The notice will be mailed no later than 90 days after entry of the Court's Preliminary Approval Order. *See id.* The Settlement Administrator will establish a website on which Settlement Class members may download and print a claim form or submit a claim online. Settlement Class Members may also review the Notice and Claim Form in English and Spanish. *See id.* §§ II.A, ¶ 43, V.A-C. The mail and e-mail notices will include instructions in Spanish, directing Spanish-speaking Class Members to the Settlement Website. *See id.* § V.B(2). The Settlement Administrator will also establish a toll-free number which class members may call to receive information about the Settlement. *See id.* § V.D.

To obtain relief from Defendants, Settlement Class members will be required to submit the claim form postmarked or otherwise submitted on or before a deadline which will fall forty-five days after the Final Approval Hearing. *See id.* § II.A(10); § V.B. The claims will be reviewed and approved by the Settlement Administrator, who will use adequate and customary standards to prevent the payment of fraudulent claims and to pay only legitimate claims. *See id.* § V.B(5). In the event a Settlement Class Member disagrees with the determination, the Settlement Class Member may send a letter to the Claims Administrator requesting reconsideration of the rejection and the Claims Administrator shall reconsider such determination, which reconsideration will include consultation with Class Counsel and Defendant's Counsel. *See id.* The Parties will meet and confer regarding resolution of those Claims and, if unable to agree, will submit those Claims

to the Court for determination. *See id.*

### D. *Class Counsel Fees and Expenses and Named Plaintiff Incentive Award*

The Parties have stipulated that the undersigned law firms will serve as Class Counsel. *See id.* § I.H. Class Counsel's application for fees and expenses for both law firms will not exceed $800,000. *See id.* §§ II.A(19), X.A. Class Counsel will also seek an Incentive Award for Plaintiff Cory not to exceed $5,000.00. *See id* § X.C. Wells Fargo will not oppose an Incentive Award of $5,000.00 or less. *See id.*

### G. *Final Approval and Objections*

Class members may object to the settlement no later than 30 days prior to the Final Approval Hearing, or as the Court may otherwise direct. *See id.* § VIII.A.)

<u>**ARGUMENT**</u>

## I. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). "Approval is generally a two-step process[.]" *Holman v. Student Loan Xpress, Inc.*, No. 8:08-CV-305-T23MAP, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009) (quoting David F. Herr, Annotated Manual for Complex Litigation § 21.632 (4th ed. 2008); *see, e .g., Fresco v. Auto Data Direct, Inc*., 2007 WL 2330895, at *4 (S.D. Fla. 2007) ("Approval of a class action settlement is a two-step process."). Preliminary approval is the first step, requiring the court to "make a preliminary determination on the fairness, reasonableness,

and adequacy of the settlement terms." *Fresco*, 2007 WL 2330895, at *4. In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 240119, at *2 (S.D. Fla. June 15, 2010).

The standard for preliminary approval of a class action settlement is not high—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (citation omitted). Still, courts may engage in a preliminary evaluation of six factors to determine whether a settlement is fair, reasonable, and adequate: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). Application of these factors here supports preliminary approval of the parties' settlement.

### A. The Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, district courts consider whether the proposed settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arm's length. The parties participated in an intensive mediation with Jay M. Cohen, a well-

respected mediator with significant experience resolving complex suits. Mr. Cohen and the parties participated in a full-day, in-person session on July 17, 2019, as well as weeks of continuing negotiation by telephone and email. The very fact of Mr. Cohen's involvement weighs in favor of preliminary approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court-appointed special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. 2004) (that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion).

The parties' extensive negotiations were also informed by significant informal discovery. Wells Fargo responded to numerous requests for data and other information relevant to Plaintiff's claims. Courts routinely find that targeted pre-discovery exchanges of information suffice to support settlement approval. *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (settlement approved where "the district court properly recognized that, although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (rejecting contention that settlement cannot be fair without formal discovery); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813, at *24 (S.D. Fla. Sept. 14, 2015) ("To avoid squandering the parties' resources, informal discovery can be *preferred* in class settlements.") (emphasis in original).

### B. The Settlement Falls Squarely within the Range of Reasonableness.

The Settlement provides considerable monetary and injunctive relief to the Settlement

Class, and falls well within the range of possible approval.

### 1. Monetary Relief

The Settlement Agreement provides considerable relief to class members nationwide. Wells Fargo has agreed to pay $1,250 to each class member who had an Affidavit of Correction filed in Florida, and who submits a valid and timely claim, and $250 to such class members with Affidavits of Correction filed in other states. *See* Ex. A § IV.B. These amounts exceed what most class members might have recovered had they prevailed at trial. In Florida, the law provides for actual damages, punitive damages, and a $2,500 civil penalty for filing a false document in the public record if there is finding of intent to defraud or harass a person adversely affected by such filing. *See* Fla. Stat. § 817.535(8)(b)(2). The standard for civil penalties is thus high, and many class members will not have incurred out-of-pocket losses as a result of the Affidavits of Correction; the clouds on the titles to their properties would only cause out-of-pocket harm if the property owner had attempted to sell or take a line of credit on the property, and been unable to do so or paid higher interest as a result. Though the civil penalty authorized by the Florida Statutes is considerable, should Plaintiff have prevailed at trial, it likely would not have been awarded to the members of the class. Through this Settlement, however, each Florida class member who submits a claim will recover half the amount of the civil penalty provided by law. *See* Ex. A § IV.B. Finally, although Florida class members could stand to recover punitive damages after a successful trial, there is no guarantee that a jury would award punitive damages in excess of the Settlement Amount, or at all. *See, e.g., Keegan v. Am. Honda Motor Co, Inc.*, No. CV1009508MMMAJWX, 2014 WL 12551213, at *10 (C.D. Cal. Jan. 21, 2014) (approving settlement and observing, "[w]hile it is possible that going to trial might have resulted in additional compensation for class members in the form of statutory and punitive damages, the settlement

offers a guaranteed recovery for eligible class members without the risk or further expense of litigation"); *In re Fernald Litig.*, No. C-1-85-149, 1989 WL 267039, at \*4 (S.D. Ohio Sept. 29, 1989) ("The summary jury did endorse plaintiffs' claim for damages for the establishment of a fund for medical monitoring and epidemiological studies and punitive damages. There is no guarantee, of course, that a trial jury would replicate this result.").

On the whole, other state statutory schemes provide less monetary relief for homeowners whose properties have been subjected to false liens. Though most state statutes provide for actual damages, many do not allow punitive damage awards or assign civil penalties for fraudulent liens. *See, e.g.,* La. Stat. §§ 10-9-518, 10-9-625 (allowing actual damages and $500 in statutory damages, but no punitive damages or civil penalty); N.C. Gen. Stat. § 25-9-518, 25-9-625 (same); Colo. Stat. § 38-35-204 (allowing only monetary damages in amount of petitioner's fees and costs). And, as in Florida, it is likely that many class members suffered no out-of-pocket damages at all. For those class members who did suffer out-of-pocket harm, "compromise is the essence of a settlement," *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); accepting an amount which may equal less than the actual out-of-pocket harm suffered will allow these class members to avoid the risks and added costs attached to proceeding with litigation. *See, e.g., Keegan, supra*. For this reason, federal courts routinely hold that settlements providing the class with even a small percentage of the recovery sought in litigation are reasonable. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible

recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12. Regardless, all members of the class, including any who may claim to have suffered damages in amounts greater than $250 and wish to proceed with litigation, will remain free to opt out and pursue litigation of their individual claims. *See* Ex. A § VIII.C.

### 2. Non-Monetary Relief

The Settlement offers significant non-monetary relief to all class members. Once the Settlement is approved, Wells Fargo will take steps to release the liens on the properties of all class members with outstanding balances on their Nowline accounts. *See* Ex. A. § VI.A. Wells Fargo will, however, reserve the right to retain first-priority liens on vacant properties attached to delinquent accounts. *See id.* Wells Fargo has also agreed that it will not record further Affidavits of Correction for Nowline accounts, except where such filing would be allowed under applicable state or federal statutory law. *See id.* This non-monetary relief adds significant value to the settlement, as it effectively eradicates the total harm caused a significant portion of the class. *Cf. Poertner v. Gillette Co.*, 618 F. App'x 624, 629 (11th Cir. 2015) (including value of the nonmonetary relief in settlement pie value not abuse of discretion).

## II.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 659 (brackets in original). "In deciding whether

to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

### A. The Settlement Class Meets the Four Requirements of Rule 23(a).

The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

#### 1. The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiff to show that the proposed class is so numerous that joinder of all members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Generally, a class of less than twenty-one is inadequate, but more than forty suffices." *Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 314 (M.D. Fla. 2018) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009)). According to Wells Fargo, there are several thousand mortgagors whose properties were subject to Affidavits of Correction. [D.E. 43-1 ¶ 16.] The proposed class in this case well exceeds the minimum threshold. *See Cox*, 784 F.2d at 1553.

#### 2. Questions of Law and Fact Are Common to All Settlement Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490; *Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271, 289 (M.D. Fla. 2017) ("Commonality is a 'relatively light burden.'"). Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality

requirement should be satisfied." *Checking Overdraft,* 2011 WL 3158998, at \*4.

Plaintiff's claims here depend on the common contention that Wells Fargo unilaterally filed invalid Affidavits of Correction in connection with mortgagors' Nowline accounts. All members of the putative class were injured in the same manner: Wells Fargo clouded the titles to their homes by recording invalid Affidavits of Correction on their properties. [D.E. 43-1 ¶¶ 11, 26-33, 54-58, 60-63.] While only one question of law *or* fact is required, many common questions capable of class-wide resolution arise here, including whether the Affidavits of Correction filed by Wells Fargo are effective to amend the terms of the class members' Open-End Real Estate Mortgages; whether the Affidavits of Correction created a cloud on the title of each property for which one was recorded; and whether by recording Affidavits of Correction in the State of Florida, Wells Fargo violated section 817.535, Florida Statutes. These issues satisfy commonality. *See, e.g., Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) ("Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." (quotation omitted)).

### 3. Plaintiff's Claims Are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires Plaintiff to demonstrate that their claims are typical of those held by the proposed class. *See* Fed. R. Civ. P. 23(a)(3). Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class. *Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 686 n.23. "Any atypicality or conflict between the named Plaintiff's claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney,* 213 F.R.D. at 491.

Plaintiff's claims in this case arise from the same course of conduct and are based on the

same legal theories as those brought on behalf of the proposed class. Plaintiff alleges that she and every class member opened Nowline lines of credit with Wells Fargo which were secured by their homes. [D.E. 43-1 ¶¶ 1, 10, 17.] Once Wells Fargo realized that the maturity dates for the loans extended beyond the termination dates for its liens on the class members' properties, it filed a unilateral and invalid Affidavit of Correction in every class member's chain of title. *See id.* ¶¶ 11, 26, 54057, 60-63. Plaintiff and the class have sought redress through common claims for violations of TILA, section 815.535, Florida Statutes, and for declaratory relief. *See id.* ¶¶ 45-70. Plaintiff's claims are typical of those of the class.

### 4. Plaintiff and Her Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

### a. Plaintiff Does Not Have Interests Antagonistic to Settlement Class Members.

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for himself and the settlement class members. *See Schojan v. Papa Johns Int'l, Inc.*, 303 F.R.D. 659, 667 (M.D. Fla. 2014). Here, Plaintiff has no interest antagonistic to those held by the Settlement Class. The class definition includes only Wells Fargo mortgagors who held Nowline accounts and whose properties were subject to invalid Affidavits of Correction. *See* Ex. A § II.A(41) . Thus, the critical issues in this case—the validity and lawfulness of Wells Fargo's Affidavits of Correction—are common issues. Plaintiff and absent class members share

a common goal:  clear the titles to their properties and recover any losses they may have suffered.

### b.  Settlement Class Counsel Are Qualified and Experienced.

The attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as class counsel.  Counsel at Gilligan, Gooding, Franjola & Batsel, P.A., have been investigating and litigating the claims in this action since May 2018, and have decades of experience litigating securities, estate and trust, and commercial cases. Counsel at Kozyak, Tropin & Throckmorton have been litigating consumer class actions for many years, and have served as lead and co-lead counsel in some of the largest class actions in the country, including many against major mortgage lenders.  Both attorneys, and their firms, that Plaintiff seeks to name as Class Counsel in this action are well respected in the communities they serve.

### B.  The Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one subsection of Rule 23(b).  *Cheney*, 213 F.R.D. at 489.  Plaintiff here seeks certification under Rule 23(b)(3), under which certification is appropriate if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods.  *See* Fed. R. Civ. P. 23(b)(3).  The latter question implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Wells Fargo's] scheme to" fraudulently extend the terms of its liens.  *Checking Overdraft Litig.,* 2011 WL 3158998, at *7. Proof of the scheme may be made by evidence that would remain the same regardless of class size

or composition.  Common issues would predominate over any individual issue.

Moreover, a comprehensive resolution of the Settlement Class members' claims in this action would be far superior to litigating each of their claims separately. Since the damage amounts allegedly owed to each individual mortgagor would likely be relatively low, "the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 675 (S.D. Fla. 2012). Accordingly, the Court should certify the proposed class.

## II.     THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE.

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties' proposed notice plan meets this standard.  The Settlement Agreement provides that the Settlement Administrator shall distribute class notice by both email and U.S. mail in the form attached as Exhibit A to the Settlement Agreement to all identifiable class members no more than 90 days after entry of the Preliminary Approval Order.  *See* Ex. A ¶ VI(i).  The Settlement also provides for a claims website, on which critical information about the Settlement and Settlement documents will be made available in both English and Spanish, and a toll-free number through which Settlement Class members can acquire information.  *See id.* ¶ II.A(43), V.C.  Class members will be permitted to submit claims by mail or online.  *See id.* ¶ V.B.

The notice itself also satisfies the requirements of the Federal Rules.  It provides, among other things, a clear definition of the Class; a description of the underlying lawsuit and the material

terms of the Settlement; instructions as to how Settlement Class members may make a claim and determine whether they are eligible to do so; an explanation of objection and opt-out rights and a date by which Settlement Class members may opt out, and information regarding how to do so; instructions as to how to object to the Settlement and an objection deadline; the date on which the Court will hold a Final Approval Hearing; and the internet address and toll-free number from which class members may obtain additional information about the Settlement and its terms. *See id.* at Ex. B. The claim form and instructions also provide clear and comprehensive instructions as to who is eligible for relief and how to make a claim. *See id.*

## IV. THE COURT SHOULD APPOINT THE UNDERSIGNED ATTORNEYS AS CLASS COUNSEL.

The parties have defined Class Counsel to include the undersigned attorneys. *See* Ex. A § II.A(11). Plaintiff and the undersigned now move the Court to appoint these attorneys as Settlement Class Counsel. Undersigned counsel have significant litigation experience litigating these cases, including experience litigating nationwide class actions against major mortgage lenders. *See, e.g., Jackson v. U.S. Bank, N.A.*, No. 14-cv-21252 (S.D. Fla.); *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.).

## V. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

Plaintiff requests that the Court schedule the Final Approval Hearing at its earliest convenience no fewer than 150 days after entry of an order preliminarily approving the Settlement. *See* Ex. A § II, ¶ A(20). Should the Court grant this Motion, Plaintiff's counsel will file the final

approval motion on a date set by the Court[4].

## <u>CONCLUSION</u>

The Court should enter an order granting preliminary approval of the settlement.

Respectfully submitted this 4th day of October, 2019.


Respectfully submitted,

/s/*Benjamin Widlanski*
Benjamin Widlanski, Esq.
Florida Bar No. 1010644
bwidlanski@kttlaw.com
Rachel Sullivan, Esq.
Florida Bar No. 815640
rs@kttlaw.com
Robert J. Neary, Esq.
Florida Bar No. 81712
rn@kttlaw.com
**KOZYAK TROPIN &
THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:    (305) 372-1800
Facsimile:    (305) 372-3508

George Franjola
**GILLIGAN, GOODING, FRANJOLA
& BATSEL, P.A.**
1531 SE 36th Avenue
Ocala, Florida  34471
Telephone:  (352) 867-7707
Fax:  (352) 867-0237

*Counsel for Plaintiff*

---

[4] A proposed Final Approval Order is attached as **Exhibit D** and will also be submitted with plaintiffs' motion for final approval.

Case No. 5:18-cv-0532-PGB-PRL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2019 the foregoing document was filed with the Clerk

of Court and furnished via CM/ECF to all participating recipients.

*/s/ Benjamin Widlanski*

11R6155