**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO.:  5:18-cv-0532-PGB-PRL**

TOMMIE JO CORY, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.

WELLS FARGO BANK, N.A., successor by
merger to WELLS FARGO FINANCIAL
BANK,

     Defendant.

_____

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT, APPLICATION FOR SERVICE AWARDS, CLASS
COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES,
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Tommie Jo Cory, on behalf of herself and the Settlement Class, hereby requests entry of an order granting Final Approval of the class action settlement as set forth in the Parties' Stipulation of Settlement which was preliminarily approved by this Court on November 18, 2019[1] and the Amended Stipulation of Class Action Settlement which was preliminarily approved by this Court on April 22, 2020.

## INTRODUCTION

Class counsel are proud to present for final approval this Settlement which will redress alleged injuries suffered by 7,839 Wells Fargo mortgagors whose properties Wells Fargo may have encumbered with invalid Affidavits of Correction in connection with the mortgagors' Nowline and PrimeEquity lines of credit. Class Counsel and Plaintiff began investigating this matter in the Spring of 2018 and were well-positioned to evaluate and negotiate this Settlement. The Settlement will compensate Class members who submit claims for the clouds Plaintiff alleges were imposed on the titles to their properties, and Wells Fargo has agreed in the Settlement to release the liens on eligible Class members' properties. Wells Fargo has also agreed not to enforce any of the Affidavits of Correction, and instead treat them (to the extent liens are not released altogether) as void. As of the date of this filing, no class member has objected or excluded themselves from the proposed settlement.

The Settlement, which is the result of rigorous, adversarial, and arm's-length negotiations by the Parties, with the aid of mediator Jay M. Cohen, involved the resolution of complex issues and provides immediate and substantial benefits to the Class. (*See* Stipulation of Class Action Settlement, attached hereto as **Exhibit A**). Notice of the Settlement was disseminated to Settlement

---

[1] An Amended Order preliminarily approving the Settlement was issued on January 23, 2020. The Amended Order simply corrected the date for Class members to file their claim forms.

Class members by direct mail notices to all Class members' last-known mailing addresses, as well email communication to all Class members where Wells Fargo had email addresses in their records. Class members were sent a long and short form notice along with the claim form and a Settlement Website was established where Class members could download the notices, the claim forms, and file their claims. After the Settlement was amended on April 18, 2020, to include additional Class members, the additional Class members were sent a long form notice along with the claim form. Previously-noticed Class members were sent a postcard or email notice (depending on whether the Claims Administrator had valid email addresses for the Class member) informing them that the Settlement had been amended and directing them to check the website for further details. These notice procedures were all approved by the Court.

For this result, Class Counsel are asking the Court to award them $990,000 in fees and expenses, negotiated only after all class benefits had been secured under the direct supervision of a nationally recognized mediator, and payable by Defendant beyond and outside of the benefits to the class. Such a fee is within the parameters established by the Eleventh Circuit, as that court has confirmed in *Poertner v. Gillette Co.*, 618 Fed. App'x 624, 629 (11th Cir. 2015). Class Counsel respectfully request that the Court grant final approval of the settlement and approve the application for attorneys' fees and Plaintiff's service award.

## **FACTUAL BACKGROUND**

### 1.     **The Affidavits of Correction**

Plaintiff brought this putative class action challenging Wells Fargo's recording of allegedly invalid Affidavits of Correction purporting to add a term regarding the duration of Wells Fargo's mortgage liens on borrowers' properties without notice to the borrower or the borrower's consent. *See* Complaint, (D.E. 1); Amended Complaint ("Am. Compl.") (D.E. 48). According to Plaintiff's

allegations, Wells Fargo devised a scheme to record thousands of such Affidavits upon realizing that the mortgages executed in connection with its Nowline credit card accounts, which were secured by borrowers' homes,[2] left millions of dollars in debt unsecured.  *See* Am. Compl. ¶¶ 9-32.  By allegedly publishing the Affidavits in the official records of counties nationwide, Plaintiff contends Wells Fargo clouded the titles to thousands of affected properties without the property owners' knowledge or consent.   Plaintiff brought claims against Wells Fargo for violations of Fla. Stat. § 817.535(8), violations of the federal Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"), and its implementing regulation, Regulation Z, 12 C.F.R. 1026 (the "TILA claim"), and declaratory and injunctive relief.

## 2.    The *Cory* Litigation and Mediation

Plaintiff Tommie Jo Cory filed a class action complaint in Florida Circuit Court in Marion County on September 14, 2018, challenging Wells Fargo's practices and bringing claims for declaratory relief and violation of Fla. Stat. § 817.535(8). (D.E. 1.)  The action was filed on behalf of a putative class consisting of all persons owning real property in the State of Florida whose real property is described in an Affidavit of Correction filed in the official record by Wells Fargo that purported to amend an Open-End Real Estate Mortgage or similar document.

Wells Fargo removed Plaintiff's case to federal court on October 19, 2018, and moved to dismiss the complaint three weeks later.  (D.E. 19.)  Wells Fargo raised three grounds for dismissal: (1) lack of standing, based on the contention that  Plaintiff suffered no injury; (2) failure to state a claim, on the ground that Plaintiff had not alleged that she was "adversely affected" by the conduct,

---

[2] The Nowline credit card was originally offered by Wells Fargo Financial Bank. In 2009, Wells Fargo Financial Bank merged with Wells Fargo Bank, N.A.; both will be referred to herein as "Wells Fargo." In October of 2017, Wells Fargo changed the name of the Nowline accounts to "PrimeEquity." For ease of reference, both are referred to as "Nowline."

3

as required by Fla. Stat. § 817.535(8); and (3) failure to state a claim, on the ground that the Fla. Stat. § 817.535(8) claim sounded in fraud, but, according to Wells Fargo, was not stated with particularity.  (*Id.*)

Soon after Wells Fargo filed its motion to dismiss, Plaintiff advised Wells Fargo that she intended to file an Amended Complaint on behalf of a national class which would assert additional claims, including a claim for violations of the Truth in Lending Act.  Before Plaintiff had an opportunity to file her Amended Complaint, the Parties agreed to mediate all of Plaintiff's claims, and the court stayed proceedings pending mediation.  (D.E. 31.)

The Parties reached a settlement-in-principle at a formal mediation session overseen by mediator Jay M. Cohen and agreed on a settlement outline on July 17, 2019. The Parties subsequently finalized and executed the Settlement Agreement and Plaintiff filed an Amended Complaint on October 4, 2019, on behalf of a nationwide class (D.E. 43-1), and sought preliminary approval of the Settlement.  After conducting a hearing, the Court granted preliminary approval finding that the Settlement was "fair, reasonable, and adequate and within the range of possible approval." (D.E. 50, ¶ 3) and scheduled the Final Approval hearing for April 20, 2020. (D.E. 52).

3.    <u>Amendment to Preliminary Approval of the Settlement</u>

On or around February 10, 2020, prior to the Final Approval hearing, Wells Fargo discovered 35 additional Class members who were inadvertently omitted from the initial list provided to the Court-approved Claims Administrator—Rust Consulting ("Rust").  Wells Fargo promptly notified Rust and Plaintiff's counsel about these additional Class members and notices were sent to the 35 newly discovered Class members on February 18, 2020.  As a result of having discovered the 35 inadvertently omitted Class members, Wells Fargo conducted a further investigation of its records. That review revealed approximately 76 previously unidentified Class members.  Pursuant to the

Parties' continued discussions on the matter, on March 6, 2020, a joint motion was filed to continue the Final Approval Hearing and allow Wells Fargo to perform a comprehensive review of historical records from an archived database for potential additional Class members.  (ECF No. 53).  The Court granted the motion and continued the Final Approval Hearing to June 29, 2020.  (ECF No. 55).

Wells Fargo ultimately determined that an additional 3,152 account holders potentially had Affidavits recorded with respect to the maturity date of their Nowline accounts.  The Parties engaged in extensive and protracted negotiations, and ultimately agreed that all 3,152 account holders, along with the 76 previously revealed Class members, should be included in the Class and sent the full Class Notice provided for in the Agreement.  In addition, the Parties agreed to have Rust provide a supplemental notice via postcard and email to previously noticed Class members informing them that the Settlement had been Amended, that the amount they could claim under the settlement had not changed, and directing those members to the settlement website for further details.  The Parties executed an Amendment to their Settlement Agreement (attached as **Exhibit B**), to reflect the changes to the Settlement Consideration, the Notice to the Class, and the Plaintiffs' attorneys' fees, and Plaintiff filed a motion to amend the preliminary approval order (D.E. 59).  The Court granted Plaintiff's motion and preliminarily approved the Amendment to the Settlement as "fair, reasonable, and adequate and within the range of possible approval." (D.E. 61).

4. **The Settlement Terms and Agreement**

   A. ***The Proposed Class***

The Settlement Agreement provides relief to "all individuals with open or closed Nowline (currently known as PrimeEquity) accounts with Wells Fargo, and for whom Wells Fargo recorded

5

an Affidavit of Correction regarding the maturity date." *See* Ex. A. § II, ¶ 41.[3]

**B. *Monetary and Non-Monetary Relief***

The Settlement Agreement and its Amendment affords members of the Settlement Class significant monetary and non-monetary relief. *See id.* § IV. Wells Fargo will pay each Florida class member who submits a claim $1,250.00. *Id.* Plaintiff, a Florida resident, brought a claim against Wells Fargo for violation of Fla. Stat. § 817.535(8). That provision authorizes actual and punitive damages for borrowers who have had false instruments filed against their properties in the public record, as well as a civil penalty of $2,500.00. *See* Fla. Stat. § 817.535(8)(b)(2). A $1,250 payment amounts to half of the civil penalty allowed by statute, even though the civil penalty would not be paid to Plaintiff or the Class members were they to prevail at trial. Moreover, Plaintiff and many, if not most, of the Class members, suffered no out-of-pocket loss as a result of Wells Fargo's false Affidavits of Correction; a cloud on title causes economic losses only where a homeowner has attempted to sell or take a line of credit against their home. Accordingly, a payment of $1,250 will fairly and adequately compensate most members of the Florida sub-class. Should any Florida class member's actual economic harm exceed $1,250, he or she remains free to opt out of the Settlement Class. *See* Ex. A § VIII.C.

Wells Fargo will pay Class members outside of Florida $250.00. *Id.* Plaintiff's Amended Complaint asserts a TILA claim against Wells Fargo on behalf of a nationwide class. TILA caps damages at the lesser of $1,000,000.00 or 1% of Wells Fargo's net worth for the entire class. The amount available to the non-Florida Class members in the Settlement, $1,653,250.00, surpasses complete relief under TILA.

---

[3] Pursuant to the Amendment, all subsequently-discovered Class Members are included in the class. *See* Ex. B.

6

The Settlement also offers many out-of-state Class members equivalent or better relief than that which they might recover were they to proceed with individual litigation in their own states. The Florida statutes provide better relief than those enacted in nearly all other states; for example, many states do not offer punitive damages or impose civil penalties for filing false instruments in the public record. *See, e.g.*, La. Stat. §§ 10-9-518, 10-9-625 (allowing actual damages and $500 in statutory damages, but no punitive damages or civil penalty); Colo. Stat. § 38-35-204 (allowing only monetary damages in amount of petitioner's fees and costs). Regardless, as with Florida Class members, out-of-state Class members will retain the right to opt out of the Settlement and pursue individual recoveries. *See* Ex. A § VIII.C.

The non-monetary relief provided by the Settlement Agreement is significant and will not only put an end to the practices described in the Amended Complaint, but also clear the titles of the properties of nearly all Class members with outstanding obligations to Wells Fargo. *Id.* § IV.A. Indeed, Wells Fargo has agreed to release the liens for all open accounts, reserving only the right to retain a first-position lien on any vacant property connected to a delinquent account. *See id.* This small exception (estimated to be approximately fewer than 20 borrowers) is to ensure that vacant or abandoned properties do not contribute to blight in their respective communities in the absence of an identifiable owner or resident. For Nowline accounts for which the lien is being released, Class members also will be afforded the opportunity to re-secure their loans, should they so desire. *Id.* For Nowline accounts for which liens are not being released, Wells Fargo agrees that it will treat the Affidavits as null and void. *Id.* Wells Fargo will also stop recording further Affidavits of Correction for Nowline accounts, except where such filing would be allowed under applicable state or federal statutory law. *See id.*

7

C.  *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, members of the Settlement Class will release Wells Fargo and its present and former parents, subsidiaries, divisions, affiliates, partners, employees, officers, directors, attorneys, accountants, experts, consultants, insurers, agents, predecessors, successors, heirs, and assigns, from all claims of every nature and description, including Unknown Claims, relating to the defense, settlement, and/or resolution of the Action or the Released Claims.  *See* Ex. A § II.A, ¶ 36; § IX.E.

D.  *Class Notice and Claims Process*

Pursuant to the Settlement Agreement, Settlement Class members received notice of the settlement and a claim form by U.S. mail at their last-known addresses and by electronic mail where Wells Fargo's records contained an email address. Settlement Class Members are also able to review the Notice and Claim Form in English and Spanish on the Settlement Website. *See id*. §§ II.A, ¶ 43, V.A-C.   The mail and e-mail notices included instructions in Spanish, directing Spanish-speaking Class members to the Settlement Website.   *Id*. § V.B(2).   The Settlement Administrator also established a toll-free number which Class members may call to receive information about the Settlement.  *See id*. § V.D.

To obtain relief from Defendant, Settlement Class members are required to submit the claim form postmarked or otherwise submitted on or before the August 13, 2020, claims deadline.  *See id*. § II.A(10); § V.B (claims deadline set for 45 days after hearing on final approval).  The claims will be reviewed and approved by Rust, who will use adequate and customary standards to prevent the payment of fraudulent claims and to pay only legitimate claims.  *See id*. § V.B(5).  In the event a Settlement Class Member disagrees with the determination, the Class Member may send a letter to Rust requesting reconsideration of the rejection and Rust shall reconsider such determination in

8

consultation with Class Counsel and Defendant's Counsel.  *See id.*  The Parties will meet and confer regarding resolution of those Claims and, if unable to agree, will submit those Claims to the Court for determination.  *See id.*

      **E. *Class Counsel Fees and Expenses and the Named Plaintiff's Case Contribution Award***

      The Court has already appointed Benjamin Widlanski of Kozyak Tropin & Throckmorton LLP, and George Franjola of the Law Office of George Franjola to serve as Lead Class Counsel for the class.[4]  (D.E. 50.)  Pursuant to Section X of the Settlement Agreement (Ex. A.) and ¶ 5 of the Amendment to the Settlement Agreement (Ex. B), the Defendant shall not object to Class Counsel's application for attorneys' fees and expenses in the amount of $990,000—paid by Defendant outside the benefit to the Class.  Defendant also agrees not to object to an Incentive Award to Plaintiff Cory in the amount of $5,000.00, outside the benefit paid to the Class.  (Ex. A., §X.C.)

**4.**     **Administration of the Settlement**

      The Court preliminarily approved the settlement and certified the proposed Settlement Class on November 18, 2019. (D.E. 50). and subsequently approved the Parties Amendment to the Settlement. (D.E. 61).  The Court approved all terms, including the proposed Notice and notice plan, and ordered the Parties to mail the Notice, Claim Instructions, and Claim Form to all Class members. (*Id.*)

      Rust obtained class member records from Defendants, including the last-known names and mailing addresses for all persons meeting the class definition and, where available, e-mail addresses. (*See* Botzet Decl. attached as **Exhibit C**, at ¶¶ 7, 10, 13.)  Rust updated the mailing list and standardized the address information using the U.S. Postal Service database. (*Id.* ¶ 17.)  A total of

---

[4] At the time he was appointed class counsel, Mr. Franjola was with the firm of Gilligan, Gooding, Franjola & Batsel, P.A.  Mr. Franjola recently filed a Notice of Change of Firm Address and Email Address advising the Court that he is now with the Law Office of George Franjola. (D.E. 62.)

7,839 claim forms were mailed by First-Class Mail.  (*Id*. ¶ 16.)  Rust also obtained 3,010 email addresses of the Class members from Wells Fargo and sent email notice to those Class members. (*Id*.)  Rust activated a settlement website on November 28, 2019, that contains answers to frequently asked questions and directions and claim forms in English and Spanish and the website has been active since that time.  (*Id*. ¶ 20.)  The notice program was also supplemented by a Keywords Sponsorship campaign resulting in 66,516 impressions and 762 total clicks to the website.  (*Id*. at ¶ 11).  A toll-free telephone number was established and maintained by Rust and has been and remains accessible 24 hours a day, 7 days a week for Class members who seek additional information.  (*Id*. ¶ 21.)

The deadline for objections and opt-outs is June 15, 2020. As of the date of this filing, no Class members have objected to or excluded themselves from the Settlement.  (*Id*. ¶¶ 23, 24.)

## LEGAL ARGUMENT

### I.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-cv-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted).  For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted).  "In order to approve the settlement agreement, the district court [i]s required to determine that it was fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank of Al., Nat. Assoc.*, 18 F. 3d 1527, 1530 (11th Cir.1994).

Courts in this circuit often consider the following factors when determining the reasonableness of a settlement:  (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and duration of litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received.[5]  *Leverso*, 18 F.3d at 1530 n.6. "In assessing these factors, the Court 'should be hesitant to substitute ... her own judgment for that of counsel.'" *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith,* 926 F.2d 1027, 1028 (11th Cir. 1991)).  Analysis of these factors compels the conclusion that the Court should finally approve the Settlement.

**A. The *Cory* Settlement Is the Product of Good Faith, Informed, and Arms'-Length Negotiations among Experienced Counsel.**

The first factor for final approval requires the Court to consider whether the settlement was obtained by fraud or collusion among the parties and their counsel.  Courts begin with a presumption of good faith in the negotiating process.  *See Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion"); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("the courts respect the integrity of counsel and presume the

---

[5] The Eleventh Circuit has also determined that courts may consider a separate, although substantially similar, six-part test: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corporation*, 737 F. 2d 982 (11th Cir. 1984).  Class Counsel believes that analysis under either the *Leverso* or *Bennett* test compels approval of the Settlement.

absence of fraud or collusion in negotiating the settlement"). The settlement terms in this case are the product of significant give and take by the settling Parties and were negotiated at arms' length. (*See* D.E. 50, 61, at ¶ 3).

The Parties participated in an intensive mediation with Jay M. Cohen, a well-respected mediator with significant experience resolving complex suits. Mr. Cohen and the Parties participated in a full-day, in-person session on July 17, 2019, as well as weeks of continuing negotiation by telephone and email.[6] The very fact of Mr. Cohen's involvement weighs in favor of approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. 2004) (fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion).

The Parties' extensive negotiations were also informed by Class Counsel's pre-filing investigation and informal discovery. During their negotiations, Wells Fargo responded to requests for data and other information relevant to Plaintiff's claims. Courts routinely find targeted informal discovery sufficient to support settlement approval. *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (settlement approved where "the district court properly recognized that, although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (rejecting contention that settlement cannot be fair without formal discovery); *Lee*

---

[6] Extensive discussions, investigations, and negotiations also took place in relation to the newly discovered potential Class members. *See* D.E. 59.

*v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, 2015 WL 5449813, at *24 (S.D. Fla. Sept. 14, 2015) ("To avoid squandering the parties' resources, informal discovery can be *preferred* in class settlements.") (emphasis in original).

### B. The Issues Presented Were Highly Complex, and Settlement Approval Will Save the Class Years of Extremely Costly Litigation in this Court and on Appeal.

This case involves complicated legal claims and defenses brought on behalf of 7,839 Class members and includes claims for a complicated Florida state statutory claim as well as a nationwide claim for violation of the federal Truth in Lending Act. (D.E. 48.)  Litigating these claims would have undoubtedly proven difficult and consumed significant time, money, and judicial resources. Even if Plaintiff were ultimately to have prevailed in this litigation (which Defendant contests), that success would likely have borne fruit for the Class only after years of trial and appellate proceedings and the expenditure of millions of dollars by both sides.  *See, e.g., In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012) *aff'd* 2014 WL 103836 (5th Cir. Jan. 10, 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second factor weighs strongly in favor of granting final approval to the Settlement Agreement.").

By contrast, the settlement provides immediate and substantial monetary relief to the Settlement Class, with payments exceeding what most Class members might have recovered had they prevailed at trial.  This range is extremely favorable and constitutes an excellent result.  *See, e.g., Saccoccio,* 297 F.R.D. at 693 (return of 12.5% of premiums charged for FPI with prospective relief "very likely exceeds what Plaintiff could have won at trial"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800, 2020 WL 256132, at *7 (N.D. Ga. Jan. 13, 2020) (monetary and non-monetary relief, "likely exceeds what could be achieved at trial.").

13

These benefits come without the expense, uncertainty, and delay of continued and indefinite litigation. In light of the costs, uncertainties, and delays of litigating through trial—to say nothing of an appeal—"the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

### C. The Factual Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Settlement.

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555. *See also*, *In re Remeron End–Payor Antitrust Litig.*, No. 02-cv-2007, 2005 WL 2230314, at *21 (D.N.J. Sept. 13, 2005) ("Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements, especially in complex class action cases, should be done.")

Prior to settlement, Class Counsel had familiarized themselves thoroughly with the mechanics of Wells Fargo's conduct and undertaken significant investigations of the affidavit filings and the claims in this litigation including: researching public records in Florida and other states to locate affidavits and identify the extent of the practice; interviewing potential Class members regarding their loans and their knowledge of the affidavits; reviewing publicly-available financial data of Wells Fargo regarding the loans and affidavits; reviewing Nowline customer billing statements; conducting extensive state-specific legal research; and speaking with a potential expert regarding Wells Fargo's practice. Further, during the course of mediation and settlement negotiations, the Parties conducted informal discovery regarding the number of Class members

14

affected and the amount at stake to ensure that the settlement was fair and complete, and to confirm the value of the relief provided to the class.

**D. Plaintiff Faced Significant Obstacles to Obtaining Relief.**

"[T]he likelihood and extent of any recovery from the defendants absent … settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("a court is to consider the likelihood of the plaintiffs' success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise"). Class Counsel and Plaintiff believe they have a compelling case, but also recognize that Defendant has raised significant, and potentially case-dispositive, defenses to the claims, including challenging Plaintiff's standing to bring a case due to lack of injury and whether Plaintiff had been "adversely affected" under Fla. Stat. § 817.535(8).  (*See* D.E. 19.)  Although Plaintiff and Class Counsel maintain that these defenses lack merit, had litigation continued, Plaintiff and the Class members would have risked not prevailing on their claims.  *See Diaz v. Hillsborough County Hosp. Auth.*, 90-cv-120, 2000 WL 1682918, at *3 (M.D. Fla. Aug. 7, 2000) (approving settlement where plaintiffs risked not prevailing, stating, "class members will avoid the risk of loss at trial and will receive the meaningful monetary and equitable relief they seek without further litigation.").  Had the Parties continued to litigate, Plaintiff could have stood to recover nothing on behalf of a nationwide class.

**E. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate When Considered Against the Possible Range of Recovery.**

The Settlement Agreement provides considerable relief to Class members nationwide.  Wells Fargo has agreed to pay $1,250 to each class member who had an Affidavit of Correction filed in Florida, and who submits a valid and timely claim, and $250 to such Class members with Affidavits of Correction filed in other states.  *See* Ex. A § IV.B.  These amounts exceed what most Class

15

members might have recovered had they prevailed at trial.  In Florida, the law provides for actual damages, punitive damages, and a $2,500 civil penalty for filing a false document in the public record if there is finding of intent to defraud or harass a person adversely affected by such filing. *See* Fla. Stat. § 817.535(8)(b)(2).  The standard for civil penalties is thus high, and many Class members will not have incurred out-of-pocket losses (i.e. actual damages) as a result of the Affidavits of Correction; the clouds on the titles to their properties would only cause out-of-pocket harm if the property owner had attempted to sell or obtain a line of credit on the property, and been unable to do so or paid higher interest as a result.  Though the civil penalty authorized by the Florida Statutes is larger than the Class Member benefit, should Plaintiff have prevailed at trial, the penalty would not have been awarded to the members of the Class.  Through this Settlement, however, each Florida class member who submits a claim will recover half the amount of the civil penalty provided by law.  *See* Ex. A § IV.B.  Finally, although Florida Class members could stand to recover punitive damages after a successful trial, there is no guarantee that a jury would award punitive damages in excess of the Settlement Amount, or at all.  *See, e.g., Keegan v. Am. Honda Motor Co, Inc.*, No. 10-cv-09508 2014 WL 12551213, at *10 (C.D. Cal. Jan. 21, 2014) (approving settlement and observing, "[w]hile it is possible that going to trial might have resulted in additional compensation for class members in the form of statutory and punitive damages, the settlement offers a guaranteed recovery for eligible class members without the risk or further expense of litigation"); *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) (approving settlement where only 15,000 out of approximately 40 million class members suffered actual damages)

On the whole, other state statutory schemes provide less monetary relief for homeowners whose properties have been subjected to false liens.  Most state statutes provide for actual damages, and many do not allow punitive damage awards or assign civil penalties for fraudulent liens.  *See,*

*e.g.,* La. Stat. §§ 10-9-518, 10-9-625 (allowing actual damages and $500 in statutory damages, but no punitive damages or civil penalty); N.C. Gen. Stat. § 25-9-518, 25-9-625 (same); Colo. Stat. § 38-35-204 (allowing only monetary damages in amount of petitioner's fees and costs).  And, as in Florida, it is likely that many Class members suffered no out-of-pocket damages at all.  For those Class members who did suffer out-of-pocket harm, "compromise is the essence of a settlement," *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Accepting an amount which may equal less than the actual out-of-pocket harm suffered will allow these Class members to avoid the risks and added costs attached to proceeding with litigation. *See, e.g., Keegan*, *supra*.  For this reason, federal courts routinely hold that settlements providing the class with even a small percentage of the recovery sought in litigation are reasonable. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12.  Regardless, all members of the class, including any who may claim to have suffered damages in amounts greater than $250 and wish to proceed with litigation, will remain free to opt out and pursue litigation of their individual claims. *See* Ex. A § VIII.C

17

The Settlement will also provide valuable prospective, non-monetary relief to the class. Once the Settlement is approved, Wells Fargo will take steps to release the liens on the properties of all Class members with outstanding balances on their Nowline accounts. *See* Ex. A. § VI.A. Wells Fargo will, however, reserve the right to retain first-priority liens on vacant properties attached to delinquent accounts. *See id.* Wells Fargo has also agreed that it will not record further Affidavits of Correction for Nowline accounts *for anyone*, except where such filing would be allowed under applicable state or federal statutory law. *See id.* This relief adds significant value to the settlement, as it effectively eradicates the total harm caused to a significant portion of the class. *See Poertner v. Gillette Co.*, 618 F. App'x at 629 (including value of the nonmonetary relief in settlement pie value not abuse of discretion); *George v. Acad. Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1379–80 (N.D. Ga. 2019) ("[Wh]en analyzing the value of non-monetary benefits, courts should consider changes to a defendant's business practices."). Plaintiff and the class faced significant hurdles in litigating their claims to resolution. The combined monetary and non-monetary relief fall well within the range of reasonableness.

**F. The Opinions of Class Counsel, the Class Representative, and Absent Class Members Strongly Favor Settlement Approval.**

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). This Court has already found that Class Counsel and Plaintiff will adequately represent the class in this action, and its conclusion was warranted. (D.E. 50 at ¶ 7.) Class Counsel began investigating Wells Fargo's practices nearly two years ago and have significant experience in class litigation and settlements, and fully support this Settlement. As of May 2, 2020, of the 7,839 Class members, none have objected or opted out. (Botzet Decl. ¶¶ 23, 24.) This overwhelming class support is evidence of the settlement's fairness. *See, e.g., Martinez v. FMS, Inc.,* 3:07-cv-

18

1157, 2009 WL 10670235, at *8 (M.D. Fla. Apr. 24, 2009) (approving settlement with no objectors, "lack of opposition to the proposed settlement indicates that it is fair, adequate, and reasonable."). Viewed either independently or taken together, the above factors confirm that the Settlement is fair, reasonable, and adequate and in the best interests of the Class.

## II.    CLASS COUNSEL SHOULD BE AWARDED REASONABLE FEES AND COSTS AND PLAINTIFF THE REQUESTED SERVICE AWARD.

For their work prior to the filing of the complaint and throughout the pre-trial and settlement phases of this litigation, Class Counsel seek $990,000 in attorneys' fees and expenses, equaling approximately 31% of the over $3.1 million in monetary settlement benefits provided to the class[7], excluding the valuable and important prospective relief.

However, Class Counsel's entitlement to attorneys' fees should be based upon the available monetary *and* non-monetary benefit obtained in a class settlement.  *See Saccoccio*, 297 F.R.D. at 695 ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *David v. Am. Suzuki Motor Corp*., No. 08–cv–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant).  In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *see also In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).  The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower.  *See Poertner*, 618 Fed. App'x

---

[7] Due to the increase in the Class size and monetary benefits made available to that Class, the amended fee request amount of $990,000.00 represents a *decrease* in the percentage of fees as in relation to the monetary benefits made available to the Class.

at 630; *Saccoccio*, 297 F.R.D. at 695; *Waters,* 190 F.3d at 1295-96; *see also Casey*, No. 12-cv-00820 (N.D.N.Y.) (D.E. 221) (the amount of claims made is "irrelevant to the underlying issue; to wit, whether the proposed settlement agreement is fair, reasonable, and adequate").

"[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added).  Moreover, "[w]hen the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *Harris v. Associated Bank, N.A. (In re Checking Account Overdraft Litig.)*, No. 1:09-MD-02036, 2013 WL 11319244, at *12, (S.D. Fla. Aug. 2, 2013).

Here, the requested percentage falls within or below the range provided by the Eleventh Circuit.  *See Camden I,* 946 F. 2d at 774 (20%–50% of the value provided); *Townsend v. Princeton Review*, 8:08-cv-1879, 2009 WL 10708315, at *7 (M.D. Fla. Dec. 2, 2009) ("[A]s a general rule the uppermost limit of recovery should be 50% of the fund.") (citations omitted); *David*, 2010 WL 1628362 at *8 n.15 (20%-50% of common fund is "the customary fee in class actions that result in substantial benefits").  A service award of $5,000 to the Class Representative is also appropriate.

### A.    The Court Should Award the Requested Attorney's Fees and Expenses.

"In determining whether a given fee is reasonable, a court should first ensure that the parties' agreement regarding the proposed fee was not collusive; that is, that the fee-negotiations were conducted at arms-length and only after all material terms of the settlement had been agreed upon." *Townsend*, 2009 WL 10708315, at *7; *see also*, *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741, at *34 (M.D. Fla. Jan. 27, 1998). "If a court so finds, great weight should be given to the negotiated fee in considering whether the fee is appropriate." *Townsend*, 2009 WL 10708315 at *7.

20

Here, Defendant agreed not to object to up to $990,000 to compensate Class Counsel only after the benefits to the Class and the Amendment to the Settlement had been negotiated. The Parties' negotiations were intense, adversarial, and conducted at arms-length.

The Eleventh Circuit also looks to the following factors when evaluating the reasonableness of the fee award to class-action counsel: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I,* 946 F.2d at 772 n.3. The Court may also consider the time required to reach settlement, the existence of substantial objections and non-monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. As explained below, the factors set forth in *Camden I* support the full award requested.

1. **The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action Support the Award.**

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See Pinto*, 513 F. Supp. 2d at 1339. These factors weigh in favor of awarding Class Counsel the requested award. Class Counsel received no compensation during the course of this litigation and have incurred expenses litigating on behalf of the Class, which they risked losing had Defendants prevailed. From the time Class Counsel filed suit, there existed a real possibility that Class Counsel would receive no compensation.

### 2.  The Requested Fees Reflect the Market Rate in Complex, Contingent Litigation.

A fee of 31% of the cash value is customary for the market for class actions.  *See Camden I,*
946 F. 2d at 774 (20%–50% of the value provided).").  "The percentage method of awarding fees in
class actions is consistent with, and is intended to mirror, practice in the private marketplace where
attorneys typically negotiate percentage fee arrangements with their clients."  *Pinto*, 513 F. Supp.
2d at 1340.  In private litigation, attorneys regularly contract for contingent fees between 25% and
40% directly with their clients.  These percentages are the prevailing market rates throughout the
United States for contingent representation.  *See id.* at 1341 (citing, *inter alia*, *Kirchoff v. Flynn*,
786 F.2d 320, 323 (7th Cir. 1986)).  In making a determination of what constitutes a fair fee, this
Court should be guided by such awards.[8]  The requested fee amount also falls within the market rate
for common fund cases. "There is no hard fast rule [sic] mandating a certain percentage of a common
fund which may reasonably be awarded as a fee because the amount of any fee must be determined
upon the facts of each case." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1252 (S.D. Fla. 2016)
"Nevertheless, [ ] an upper limit of 50% of the fund may be stated as a general rule, although even
larger percentages have been awarded." *Id.* (internal citations omitted).

### 3.  The Novelty and Difficulty of the Questions at Issue

This case presented difficult questions of law and complex issues of fact.  Class actions are
generally complex, but this one is particularly so, involving interpretations of the Fla. Stat. §
817.535(8) and the federal TILA statute and their applicability to the facts here, mortgage and title
issues, and possible dispositive defenses.  Moreover, most of the Class members probably suffered
no out-of-pocket damages relating to the affidavits making recovery all the more complex and likely

---

[8]  *See also, e.g., Gutter v. E.I. Dupont De Nemours & Co.,* 95–2152–Civ–Gold (S.D. Fla. May 30,
2003) (33-1/3 %); *Waters,* 190 F.3d 1291 (affirming 33-1/3%); *In re Home Shopping Network Sec.
Litig.,* Case No. 87-428-T-13(A) (M.D. Fla. 1991) (33%).

undesirable by many plaintiffs' firms. The difficulty of litigating these issues amply supports the full award requested. *See e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 317, (difficulty of proving injury and damages to the class supported approval of settlement and attorney's fee request).

### 4. The Skill, Experience, and Reputation of Class Counsel

Class Counsel have established their skill, experience, and reputation in the record, and in repeated cases before courts in this Circuit. Class Counsel have extensive experience in class litigation including, specifically, in cases against mortgage lenders, including Wells Fargo. *See e.g.* *Braynen v. Nationstar Mortgage, LLC*, No. 14-cv-20726 (S.D. Fla.); *Lee v. Ocwen Loan Servicing LLC*, No. 14-cv-60649 (S.D. Fla.); *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.). Beyond that, Class Counsel's reputation, diligence, expertise, and skill are reflected in the results they have achieved. They resolved this dispute efficiently despite the potential hurdles and the arguments raised by Defendant. The quality of Class Counsel and their achievement in this case is equally shown by the strength of their opponents in Winston & Strawn, LLP and Burr & Forman, LLP, both reputable firms known for the skills and achievements of their attorneys. *Ressler*, 149 F.R.D. at 654 ("Moreover, in assessing quality, the Court has considered the quality of the *opposition* as well as the standing of plaintiff's counsel.") (emphasis in original) This factor thus also favors awarding the requested fee.

### 5. The Result Achieved for the Class

The result achieved is a major factor to consider in making a fee award and here, it is significant and perhaps best establishes the propriety of the requested fee award. *See Hensley v. Eckerhart,* 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342; *Behrens,* 118 F.R.D. at 547-48 ("The quality of work performed in a case that

23

settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of *both* monetary and prospective relief. *See Poertner*, 618 Fed. App'x at 629; *Perez*, 501 F. Supp. 2d 1360; *LiPuma,* 406 F. Supp. 2d at 1323; *In re Managed Care Litig.*, 2003 WL 228500700, at *6 (S.D. Fla. Oct. 24, 2003). The results here, over $3.1 million in cash made available to the Class and the extensive nonmonetary relief, are excellent. Defendant will cease the key practice that was the gravamen of the Amended Complaint and release liens on the properties of all Class members. These results are powerful evidence supporting the fee award.

### 6. The Time and Labor of Class Counsel

Investigating, prosecuting, and settling the claims here demanded considerable time and labor and precluded Class Counsel from performing work on other matters. The complexity of this case required organization by Class Counsel, including assignment of work and regular meetings and calls to ensure coordinated, productive work efforts to maximize efficiency and minimize duplication of effort. Class Counsel spent many hours investigating the claims of many of the potential plaintiffs against Defendant in this action. Class Counsel interviewed Nowline borrowers and potential plaintiffs to gather information about Defendant's conduct and its impact upon consumers; obtained, reviewed, and analyzed the Wells Fargo mortgages and the account applications, researched and analyzed the applicability of Fla. Stat. § 817.535(8) and similar state statutes, and reviewed other informal discovery produced by Wells Fargo. In addition, Class Counsel engaged in extensive and protracted discussions and investigations after Wells Fargo's discovery of additional Class members. Moreover, the work of Class Counsel will likely continue to incur fees related to the Settlement after final approval. The Agreement contains provisions for the Parties to meet and confer if any Class Member objects to the denial of their claim. In addition, Class Counsel expects to continue to have communications with Class Members who have questions

24

regarding the Settlement.

**7. The Reaction of the Class to the Settlement.**

As of May 2, 2020, there are no objections and no valid opt-out requests, which supports the fee request. *See Burrow v. Forjas Taurus S.A.,* No. 16-cv-21606, 2019 WL 4247284, at *12 (S.D. Fla. Sept. 6, 2019) (the fact that no class member objected supported the fee award); *Pinto*, 513 F. Supp. 2d at 1343; (Botzet Decl. ¶¶ 23, 24.)

**B. A Service Award of $5,000 Is Appropriate.**

The Court should approve a service award of $5,000 for the Representative Plaintiff, Tommie Jo Cory. The detailed notice advised Class members that Plaintiff would apply for a service award of $5,000, and, to date, no class member has objected to this reasonable request. *See Seghroughni v. Advantus Rest., Inc.*, No. 12-cv-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (granting $5,000 service award). In instituting this litigation, Plaintiff acted as private attorney general and aided in the investigation of these claims and settlement seeking a remedy for what appeared to be a public wrong. *See Pinto,* 513 F. Supp. 2d at 1344. Private class action suits are a primary weapon in the enforcement of laws like Fla. Stat. § 817.535(8) that are designed for the protection of the public. *See Pinto,* 513 F. Supp. 2d at 1344. Approval of this award is warranted as a matter of policy and is appropriate under applicable precedents.

## <u>CONCLUSION</u>

Plaintiff and Class Counsel respectfully request the Court grant final approval of the Settlement, as well as the applications for Class Counsel's fees and expenses and the Class Representative service award. A proposed order is attached hereto as **Exhibit D**.

1220937

Respectfully submitted this 18th day of May, 2020.

| | |
|---|---|
| /s/ George Franjola<br>George Franjola<br>Florida Bar No. 333271<br>gfranjola@franjolalaw.com<br>**Law Office of George Franjola**<br>3610 E. Fort King Street<br>Ocala, Florida  34470<br>Telephone: (352) 812-0462<br>*Class Counsel* | /s/Benjamin Widlanski<br>Benjamin Widlanski, Esq.<br>Florida Bar No. 1010644<br>bwidlanski@kttlaw.com<br>Rachel Sullivan, Esq.<br>Florida Bar No. 815640<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>Florida Bar No. 81712<br>rn@kttlaw.com<br>**KOZYAK TROPIN &<br>THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br>*Class Counsel* |

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2020 the foregoing document was filed with the Clerk of Court and furnished via CM/ECF to all participating recipients.

/s/ Benjamin J. Widlanski
Benjamin J. Widlanski

1220937